IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TAMIKA PARKER as Next Friend of R.T., a Minor Child, as Wrongful Death Representative of Jose Torres,<br><br>Plaintiff,<br><br>v.<br><br>CORECIVIC, INC., TROUSDALE COUNTY, TENNESSEE, LYBRUNCA COCKRELL, MARTIN FRINK, TALBERT JEFFERSON, and JACQUELINE NORMAN,<br><br>Defendants. | Civil Action No. 3:23-cv-191<br>Judge Richardson/Frensley |

## ORDER GRANTING MOTIONS TO QUASH SUBPOENA

Before the Court is Third Party District Attorney General Jason Lawson's (Lawson) "Motion to Quash or Modify the Subpoena of Nonparty Daniel Horwitz" (Docket No. 55) and Third Party Tennessee Department of Correction's (TDOC) "Motion to Quash Subpoena" (Docket No. 58). For the reasons set forth below, the two motions are **GRANTED.**

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 1, 2022, Jose Torres was placed in a prison cell alongside Gustavo Garcia Reyes at Trousdale Turner Correctional Facility (Trousdale). Docket No. 6 at 7. Twelve days later, correctional officers discovered Torres dead in that cell. *Id.* at 6–9. Tamika Parker (Plaintiff), Torres's child, and Najmah Torres-Justiniano, the mother of another of Torres's children, filed suit against CoreCivic, Inc., Trousdale County, Tennessee, Lybrunca Cockrell, Martin Fink, Talbert Jefferson, and Jacqueline Norman (the Defendants). *See* Docket No. 1.[1] Plaintiff brings state-law

---

[1] Torres-Justiniano has since been removed as a plaintiff. Docket No. 70.

claims for negligence and claims under 42 U.S.C. § 1983 for alleged violations of Torres's Eighth and Fourteenth Amendment rights. Docket No. 6 at 15–21.

On May 28, 2024, Plaintiff issued a subpoena to Daniel Horwitz, an attorney, seeking production of "[a]ny and all discovery documents in [his] possession from cases in which CoreCivic, Inc., any of its subsidiaries, agents, and/or employees are defendants." Docket No. 53-1 at 4. One case specifically identified was *Lakenya McGhee-Twilley v. CoreCivic of Tennessee*, Case No. 3:23-CV-77 (M.D. Tenn.), where Horwitz served as counsel for the plaintiff. In that case, the third parties, Lawson and TDOC, and the named parties agreed to a protective order that placed strict disclosure restrictions on certain discovery documents. Docket No. 56-2. Lawyers for Lawson and TDOC exchanged emails with Plaintiff detailing their objections to the scope of the subpoena. Docket Nos. 56-4, 56-5. And on June 17, they met to discuss these same grievances. Docket No. 59 at 2. After failing to resolve the disagreements, Lawson and TDOC filed separate motions seeking to quash the subpoena. Docket Nos., 55, 58.

While the motions were pending, Horwitz complied with the subpoena and produced the requested documents on July 1. Docket No. 60-1. He declined to include some documents that he deemed nonresponsive, detailing his objections in a cover letter to his subpoena response. *Id.* Because both motions seek to quash the same subpoena, they will be analyzed together.

## II. LEGAL STANDARDS

In general, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 45 of the Federal Rules of Civil Procedure governs third-party subpoenas and permits parties to command nonparties to produce documents. Fed. R. Civ. P. 45(a)(1). And "[o]n timely motion," a court is required to "quash or modify a subpoena" that "requires disclosure of

2

privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv).

The "trial court has broad discretion to determine the proper scope of discovery." *Pictsweet Co. v. R.D. Offutt Co.*, No. 3:19-CV-0722, 2020 WL 12968432, at *2 (M.D. Tenn. Apr. 23, 2020) (citing *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016)). Indeed, the district court "must limit" the scope of discovery when it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). "Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236 (quoting *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). Simply put, the district court "must balance the 'right to discovery with the need to prevent fishing expeditions.'" *Id.* at 236–37 (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir. 2012)) (internal quotation marks omitted).

### III. LAW AND ANALYSIS

#### A. Standing

A motion to quash brought by someone other than the target of a subpoena implicates the question of standing, which requires the Court to determine whether the movants have alleged "such a personal stake in the outcome of the controversy as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (quoting *Warth*

3

*v. Seldin*, 422 U.S. 490, 498–99 (1975)) (internal quotation marks omitted). Ordinarily, a party lacks standing to object to a subpoena directed to a third party "unless the objecting party claims some personal right or privilege with regard to the documents sought." *EEOC v. Whiting-Turner Contracting Co.*, No. 2:21-CV-00753, 2022 WL 3206388, at *2 (M.D. Tenn. Aug. 8, 2022) (quoting 9A Charles Alan Wright and Arthur R. Miller, et al., *Federal Practice and Procedure* § 2549 (3d ed.)). What precisely constitutes a sufficient personal right or privilege to create standing is unclear in the Sixth Circuit. *Carty v. Metro. Life Ins. Co.*, No. 3:15-CV-01186, 2018 WL 3861827, at *3 (M.D. Tenn. Aug. 14, 2018). "However, '[s]uch rights or privileges have been recognized with respect to personal bank records, information in a personnel file, corporate bank records, or Indian tribal records.'" *Id.* (quoting *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, No. 1:11-CV-0851, 2013 WL 146362, at *5 (S.D. Ohio Jan. 14, 2013)) (alteration in original). "The party moving to quash a subpoena bears the burden of proof." *EEOC*, 2022 WL 3206388, at *2.

Plaintiff's subpoena was directed to Horwitz, a nonparty, and Lawson and TDOC are both nonparties. Lawson, who is leading an ongoing criminal prosecution stemming from the underlying facts at issue in *McGhee-Twilley*, argues that he has a personal right in the subpoenaed documents sufficient to create standing for two reasons. Docket No. 61 at 2–3. First, he contends that confidential documents relevant to the ongoing criminal prosecution are contained within the *McGhee-Twilley* case files. *Id.* Second, he avers that he has a general right to protect his interests secured by the protective order. *Id.* TDOC likewise claims a personal right to protect its interests secured by the protective order. Docket No. 62 at 2–3. It further argues that it possesses a personal right sufficient to create standing because the *McGhee-Twilley* case file contains certain protected documents. *Id.*; Docket No. 59 at 1–2. Plaintiff does not address these arguments but instead

4

responds that only the subpoenaed entities or parties to the action have standing to contest a subpoena. Docket No. 60 at 2–3. Because Lawson and TDOC are neither parties to this action nor the subpoenaed entities, Plaintiff contends that they lack standing to bring their motions to quash. *Id.*

Lawson and TDOC both point to *Brown v. Sperber-Porter*, No. CV-16-02801-PHX-SRB, 2017 WL 11482463, at *1 (D. Ariz. Dec. 8, 2017) in support of their contention that third parties can establish standing to move to quash a subpoena directed at another third party. Docket No. 61 at 2–3; Docket No. 62 at 2–3. In that case, nonparty intervenors and the defendant brought motions to quash a subpoena directed at third-party. *Brown*, 2017 WL 11482463, at *1. The court, citing the "weight of the case law," determined that the defendant had standing to challenge the third-party subpoena. *Id.* at *3. It did not consider whether the intervenors possessed standing but noted that the plaintiffs' response to the motions to quash challenged only the defendant's standing. *See id.* at *2 n.2. Nevertheless, the court denied both motions. *Id.* at *7. While *Sperber-Porter* supports an argument that *parties* can establish standing to challenge third-party subpoenas, it is inapplicable to the facts of the present case. Indeed, aside from this out-of-circuit and unpublished district court case, Lawson and TDOC fail to point to any relevant authority to support their assertion that *third parties* can establish standing to bring a motion to quash a third-party subpoena.

Despite their nonparty status, both Lawson and TDOC argue that the existence of the *McGhee-Twilley* protective order creates enough of a personal right to give them standing to pursue their motions. Docket No. 61 at 2–3; Docket No. 62 at 2–3. None of the authority that they provide, however, supports this argument. *See* Docket No. 61 at 2; Docket No. 62 at 2. In *Pictsweet Co. v. R.D. Offutt Co.*, No. 3:19-CV-0722, 2020 WL 12968432, at *3–4 (M.D. Tenn. Apr. 23, 2020), the court considered whether a defendant had standing to quash a third-party

5

subpoena or alternatively to seek relief from a protective order. And in *St. Clair Cnty. Employees' Ret. Sys. v. Acadia Healthcare Co., Inc.*, No. 3:18-CV-00988, 2024 WL 1342567, at *4 (M.D. Tenn. Mar. 28, 2024), the court generally discussed when parties have standing "to contest discovery sought from third parties." Likewise, the court in *Boodram v. Coomes*, No. 1:12CV-00057-JHM, 2016 WL 11333789, at *2 (W.D. Ky. Jan. 28, 2016), concluded that the defendants had standing to move to quash a nonparty subpoena because the subpoena sought documents containing the defendants' financial records. Cases from outside the Sixth Circuit provide helpful guidance.

The Eastern District of Pennsylvania has made clear that when a "subpoena seeks confidential documents that have been produced subject to a protective order in [an] unrelated action," a "personal right" sufficient to grant standing exists. *In re Keebaugh*, No. MC 19-163, 2019 WL 5802703, at *2 & n.6 (E.D. Pa. Nov. 6, 2019) (collecting cases). Similarly, the Southern District of California has held that a party "clearly does have standing based upon its personal right and interest in . . . documents" requested by a subpoena, when those documents were "produced in another litigation" and are "subject to a protective order." *Murr v. Midland Nat. Life Ins. Co.*, No. 11-CV-1362-BTM POR, 2011 WL 3236001, at *1 (S.D. Cal. July 28, 2011) (internal quotation marks omitted) (collecting cases). Parties seeking to quash a subpoena on the grounds that the documents requested are subject to a protective order from other litigation thus have standing to bring their motion.

Despite the paucity of relevant caselaw, nonparties, like Lawson and TDOC, can also establish standing on this ground. The text of Rule 45 of the Federal Rules of Civil Procedure is instructive. The court hearing a motion to quash "must" quash or modify a subpoena that "requires a *person* to comply beyond the geographical limits specified in Rule 45(c)" or "subjects a *person*

6

to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(ii), (iv) (emphasis added). And the court must quash or modify a subpoena that "fails to allow a reasonable time to comply" or "requires disclosure of privileged or other protected matter." *Id.* (i), (iii). Rule 45 thus contemplates a subpoena subjecting a *person*, not necessarily a party, to unreasonable compliance dates, geographical constraints, forced disclosure of protected material, or undue burdens.

To hold otherwise would permit circumvention of the Federal Rules and invite gamesmanship in discovery. Because the documents that Lawson and TDOC seek to protect are already subject to the *McGhee-Twilley* protective order (Docket No. 56-2), they have demonstrated a personal right in the documents sought sufficient to grant them standing to bring their motions. The Court declines to address Lawson and TDOC's additional arguments regarding standing.

### B. Motions to quash

Lawson and TDOC seek to quash the subpoena in order prevent the disclosure of documents protected by the *McGhee-Twilley* protective order. Docket No. 56 at 4–10; Docket No. 59 at 4–11. In response, and as addressed above, Plaintiff first argues that Lawson and TDOC lack standing to bring their motions. Docket No. 60 at 2–3. She next contends that because Horwitz complied with the subpoena and produced the documents, the motions to quash are moot. *Id.* at 3.

An issue becomes moot when "it becomes 'impossible for the court to grant' meaningful relief." *Radiant Glob. Logistics, Inc. v. Furstenau*, 951 F.3d 393, 396 (6th Cir. 2020) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). "Parties have an 'obvious possessory interest' in material disclosed during discovery, and courts may vindicate that interest by ordering the other side to destroy 'any and all copies it may have in its possession.'" *Ohio A. Philip Randolph Inst. v. Obhof*, 802 F. App'x 185, 187 (6th Cir. 2020) (quoting *Church of Scientology of Cal.*, 506 U.S. at 13). *But cf. Comer v. Roosen Varchetti & Olivier, PLLC*, No. CV

7

17-13218, 2018 WL 11473294, at *1 (E.D. Mich. Sept. 5, 2018) ("[A] motion to quash a subpoena that has already been honored is moot.") (collecting cases). Lawson and TDOC both claim an interest in the confidential documents that Horwitz produced, and they ask the Court to vindicate that interest by ordering Plaintiff to destroy the violative documents. Docket No. 61 at 5; Docket No. 62 at 5. The motions to quash are accordingly not moot.

The Court now turns to Lawson's and TDOC's arguments supporting their motions to quash. Although they seek to prevent the disclosure of different documents, their arguments are largely duplicative. For her part, Plaintiff does not directly respond to the movants' arguments, but instead asserts that the subpoena should not be quashed because she has agreed to honor the terms of the *McGhee-Twilley* protective order. *Id.* at 3–4. The arguments for Lawson and TDOC are more persuasive.

Lawson and TDOC first contend that the subpoena should be quashed on the grounds that it requires the disclosure of protected and confidential matter. Docket No. 56 at 4–6; Docket No. 59 at 4–6. A court is required to quash or modify a subpoena that "requires the disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). They argue that the *McGhee-Twilley* protective order specifically protects the documents that Plaintiff seeks, and as such, Rule 45 prohibits their disclosure. Plaintiff points to the text of the protective order, suggesting that the order specifically contemplated how to protect confidential documents requested by a subpoena.

The *McGhee-Twilley* protective order provides in relevant part that:

Production of any discovery responses, documents, information, or materials designated as "CONFIDENTIAL" or "CONFIDENTIAL ATTORNEY'S EYES ONLY" by a non-producing party in response to a lawful subpoena, motion, or order, in any court or other federal, state, city, and/or local agency in another action shall not be deemed a violation of any of the terms of this Order. However, the party receiving such subpoena, motion, or order shall first promptly notify the

8

> producing party and, at least fourteen (14) days prior to production, if it can be done without placing the non-producing party in violation of the subpoena, motion, or order, shall give the producing party the opportunity to secure confidential treatment, whether through this Protective Order or otherwise, for such discovery responses, documents, information, or materials upon terms comparable to those applicable to such discovery responses, documents, information, or materials under the terms of this Order and/or seek to block the production.

Docket No. 56-2 at 8. Because Horwitz produced confidential records "in response to a lawful subpoena," there was no violation of the protective order. *Id.* The protective order, however, also clearly contemplates giving the "producing party," here Lawson and TDOC, "the opportunity to secure confidential treatment, whether through this Protective Order or otherwise," for such confidential documents. *Id.* And confidential treatment is exactly what Lawson and TDOC seek in the present case.

Lawson and TDOC next argue that the subpoena should be quashed because the documents that it requests are irrelevant to the claims in the present case. Docket No. 56 at 6–7; Docket No. 59 at 7–9. The prosecution files protected by the *McGhee-Twilley* order, Lawson contends, are irrelevant here because the documents concern people accused of murder, not CoreCivic or Plaintiff, and an unrelated victim. Docket No. 56 at 7. TDOC argues that Plaintiff's request for all discovery material from another lawsuit renders the subpoena improper. Docket No. 59 at 8. Plaintiff offers no argument to rebut the claim that the subpoena seeks irrelevant information.

Finally, Lawson and TDOC argue that the subpoena imposes an undue burden on them and should therefore be quashed. Plaintiff again fails to respond to this argument. "Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co., Inc. v. United*

*States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). But "only the entity responding to the subpoena has standing to challenge the subpoena on the basis of undue burden." *Abundes v. Athens Food Servs., LLC*, No. 3:14-1278, 2015 WL 13664280, at *2 (M.D. Tenn. Sept. 18, 2015) (citing *Riding Films, Inc. v. John Does 129-193*, No. 2:13-CV-46, 2013 WL 3322221, at *6 (S.D. Ohio July 1, 2013)). Lawson's and TDOC's "request to quash or modify the subpoena as unduly burdensome is therefore denied." *See id.* In support of their other arguments to quash, Lawson and TDOC point to *Pictsweet Co. v. R.D. Offutt Co.*, No. 3:19-CV-0722, 2020 WL 12968432, at *1 (M.D. Tenn. Apr. 23, 2020).

In *Pictsweet*, the plaintiff issued a third-party subpoena to a law firm that represented an insurance company in unrelated litigation brought against CRF Frozen Foods, LLC (CRF), a defendant in that case and in *Pictsweet*. *Id.* The subpoena sought "all documents filed" in the unrelated litigation, among other records. *Id.* CRF opposed the subpoena claiming that the subpoenaed information was protected by a protective order in the unrelated litigation, was irrelevant to Pictsweet's claims, and would be unduly burdensome to produce. *Id.* at *2.

The court granted CRF's motion to quash, relying on the reasoning of another case with similar facts and holding that "discovery that would require circumvention of a protective order in a separate litigation should only occur in justified circumstances and not when the information could be obtained from another party in the same litigation." *Id.* at *4 (citing *Barella v. Village of Freeport*, No. 12-CV-0348 ADS WDW, 2012 WL 6103222, at *2–3 (E.D.N.Y. Dec. 8, 2012)). It further concluded that "[a]sking for all documents produced in another matter is not generally proper, . . . as the propounding party is not in a position to even know what they are actually asking for." *Id.* at *5 (quoting *Goro v. Flowers Foods, Inc.*, No. 17-CV-02580-JLS-JLB, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019)) (alteration in original). "[O]verlap between the issues

10

in" prior litigation and another case, "does not establish relevancy." *Id.* Such an overbroad subpoena constituted an "impermissible fishing expedition," requiring the court to quash the subpoena and implement a protective order. *Id.* at *5–6.

The same logic applies in the present case. Plaintiff's subpoena seeks "[a]ny and all discovery documents in your possession from cases in which CoreCivic, Inc., any of its subsidiaries, agents, and/or employees are defendants." Docket No. 53-1 at 4. This request "casts a third-party subpoena net to obtain all discovery and more . . . without any showing of relevancy under Rule 26(b) as to specific information." *See Pictsweet*, 2020 WL 12968432 at *5. And the *McGhee-Twilley* protective order permits Lawson and TDOC the opportunity to secure confidential treatment of records in which they have a personal interest. Allowing Plaintiff to obtain documents protected by the *McGhee-Twilley* order by subpoenaing Horwitz would essentially defang the protections afforded by that order. Should Plaintiff wish to obtain the protected documents, she can subpoena the parties that produced those documents. However, she would still be required to show that the documents are relevant, which she has not yet done.

## IV. CONCLUSION

For these reasons, and because Plaintiff fails to respond to Lawson's and TDOC's arguments in support of their motions to quash, the Court therefore holds that the motions to quash (Docket Nos. 55, 58) are **GRANTED**. Accordingly, Plaintiff is hereby **ORDERED** to destroy any and all copies of the documents that Lawson and TDOC have identified as protected by the *McGhee-Twilley* protective order.

**IT IS SO ORDERED.**

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**